363 F.2d 893
 Application of Serge Virgile BEAUNE, Deceased, by Catherine Louise Albert Beaune, Roberte Louise Beaune, Guy Joseph Beaune and Daniel Charles Beaune, Legal Successor and Heirs.
 Patent Appeal No. 7637.
 United States Court of Customs and Patent Appeals.
 July 28, 1966.
 
 John E. Lind, Washington, D. C., for appellants.
 J. Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.
 Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*
 SMITH, Judge.
 
 
 1
 The issue is whether the invention, a process, defined in the single claim[1] on appeal is obvious under the terms of 35 U.S.C. § 103. The claim is as follows:
 
 
 2
 4. Process for the impression of multiple colors upon supports such as fiduciary papers starting from several engraved polychrome elements, comprising forming for each element an engraved copper plate reproducing the motif relative to each element, then forming for each element a plate called the impression plate comprising the motif of relative colors for the corresponding element and differing from the motif to be reproduced, transferring the motif of the impression plate upon inking rollers, cutting each of said inking rollers in order to allow to remain in relief only the motif relative to the color assigned to said roller, inking one of said rollers with a fundamental color, inking each of the other rollers with an altered or derivative color of the fundamental color, inking one of the engraved plates successively with each of said rollers, then wiping said plate so that only the engraved lines contain the ink attributed to such lines, doing the same operation for the other engraved plates by attributing to each of said plates a different fundamental color and colors altered or derivatives of said different fundamental color, superposing successively upon said support each of the engraved plates so inked while using for each of the transfers upon said support except the last a cylinder having a blanket to transfer the ink attributed to the engraved lines of each plate with a very slight pressure without deforming said support, and then effecting the last transfer directly of the engraved plate upon the support by a cylinder having a blanket pressing the support upon the engraved plate to transfer the ink attributed to the engraved lines with a pressure causing simultaneously a deformation of said support.
 
 
 3
 The prior art references relied on are as follows:
 
 
 4
 Lee 282,995 Aug. 14, 1883
 Schultz et al. 1,379,365 May 24, 1921
 Yetter 1,581,151 Apr. 20, 1926
 Lohmann 2,085,435 June 29, 1937
 Lathey 2,303,646 Dec. 1, 1942
 British patent 610,943 Oct. 22, 1948
 
 
 5
 Appellants' invention will be considered first. It concerns a process for the impression of multiple colors on paper from several engraved elements. The embodiment described in the application and discussed in the briefs relates to three engraved elements. Each of the three engraved elements, mounted on rolls, operates successively on the paper and receives ink from sets of three mutually exclusive inkers. Each engraved element thus receives three inks, a fundamental color and two derivatives of that color. Concerning the first two engraved elements, the ink deposited on the engraved element is transferred to the paper via a roll covered with a blanket of plastic material with "slight pressure." In the third or last printing the ink on the engraved element is deposited directly on the paper. A roll exerts pressure directly on the paper as it passes over the third engraved element causing deformation of the paper.
 
 
 6
 Appellants comment in their brief on the invention as follows:
 
 
 7
 * * * the first transfers or printings are made with a very slight pressure and as they are small in number (two in the example cited in the application) the deformation of the paper is zero and consequently the registration can be exact which permits documents whose production is simple and highly protected against counterfeiting.
 
 
 8
 The transfer of the last printing element is carried out under pressure in order to obtain deformation which modifies the general design and makes more difficult still the counterfeiting of the document.
 
 
 9
 In addition to the above feature of the invention the invention also comprises a combination of the following:
 
 
 10
 1. The superpositioning upon a paper of copper plate engraved elements, each inked with a fundamental color and colors derived or obtained from the fundamental color.
 
 
 11
 2. The inking of each element by inking rollers carrying in relief the color motif attributed to such roller (the fundamental color or the derived or faded color).
 
 
 12
 3. The constitution of the motif of the colors of the printing rollers starting from a plate called the impression plate comprising the complete motif of color, this complete motif being transferred upon each of said rollers which are then engraved in such a manner so as only to allow in relief the motif of the color assigned to such roller.
 
 
 13
 Claim 4 was rejected as "unpatentable over Schultz et al. in view of the teachings of Lathey and British." Lee was "cited only to show that plate printing wherein the ink is transferred directly from the engraved plate to the paper takes place under heavy pressure between the printing plate and the impression cylinder." Lohmann was cited to show that the pressure between the intaglio type die and the resilient impression cylinder is such as to emboss the paper. Yetter was relied on "only to show it to be conventional to use different colors or shades and times [sic, tints] of a single color in intaglio printing."
 
 
 14
 The board in its opinion adopted the following reasoning of the examiner:
 
 
 15
 The British patent teaches the technique recited in lines 3 to 11 for making cut out inking rollers and indicates that they are to be used for inking intaglio plates with several colors * * Lathey has a clearer showing of inking intaglio plates with cut out inking rollers and then wiping to leave the ink only in the engraved lines. Having the colors of the inks as "fundamental" (or primary) and "altered or derivative colors", as called for in this claim, is the use of shades and times [sic, tints] of a color, in different inks, and a matter of choice in the art, as in Yetter, for example. Schultz et al. disclose multicolor printing wherein the last ink impression is made directly upon the paper by an intaglio printing plate and the preceding ones are made indirectly, by using a blanket to transfer the ink from the printing plates to the paper. This reference also indicates that intaglio printing plates may be used for these preceding impressions. It is not seen to be unobvious to one skilled in the art to have all the printing plates on the cylinders * * * of Schultz et al. as intaglio plates, to ink each of these plates with several inks, as taught by Lathey and the British patent, using inking rollers made as shown in the British patent. Having the last, direct impression made with heavy pressure, so as to deform or emboss the paper is common in the art, as exemplified by Lee or Lohmann, and is not considered to make the claim patentable over the references.
 
 
 16
 The board added the following comments in affirming the examiner's rejection:
 
 
 17
 While Schultz et al. appears to apply the preliminary printings * * * simultaneously to the paper * * * through the common impression roller * * * and not "successively" as called for in the claim, we do not believe that successive application of the printings would exceed routine choice or skill of persons having ordinary skill in the art. We stress also that a reading of the Schultz et al. specification has left no doubt in our minds that the preliminary printing by roller * * * does not deform the paper and that the intaglio roller * * * does deform it, which is in effect the inventive concept urged as patentable in the instant application.
 
 
 18
 It is appellants' position here that the examiner and board interpreted every reference correctly save one, the patent to Schultz. Appellants argue:
 
 
 19
 The present application presents a new and novel feature according to which the transfer of ink contained in the lines of the last engraved plate is assured by a cylinder * * * covered with a hard blanket allowing the transfer of the ink under a pressure so that the support paper is deformed.
 
 
 20
 The first transfers are carried out under the slightest pressure possible in such a way as not to deform the support paper while preserving all the suitable characteristics of the copper engraving process.
 
 
 21
 This feature is not found in Schultz et al. where there is no deformation of the support paper during the last ink transfer.
 
 
 22
 * * * * * *
 
 
 23
 The other patents relied upon by the Examiner and the Board of Appeals show only a single step of the combination claimed and to combine these various steps in one process as called for in the claim on Appeal involves invention, particularly when the valuable results accomplished are viewed.
 
 
 24
 We shall first determine, as a factual matter, what Schultz fairly teaches before proceeding to the issue under section 103. In re Chupa, 359 F.2d 908, 53 CCPA ___.
 
 
 25
 Schultz discloses a method and apparatus for making multicolor prints. Three printing rolls and an intaglio impression cylinder cooperate with a main impression cylinder. They are located at 90° intervals about the periphery of the main cylinder. A second intaglio impression cylinder cooperates with the first intaglio cylinder. The paper to be printed passes between the first intaglio cylinder and the main cylinder and then between the two intaglio cylinders.
 
 
 26
 The three printing rolls transfer successively yellow, red and blue color inks to the same surface area of the main cylinder. Planographic (surface printing) plates are preferred for the printing rolls over intaglio (relief printing) plates. The second intaglio cylinder prints black ink directly on the paper after the color ink has been transferred from the main cylinder to the paper.
 
 
 27
 Both intaglio cylinders are mounted on eccentrics in order that they may be moved in and out of contact. As the surface area of the main cylinder carrying the ink approaches the point of contact between the first intaglio cylinder and the main cylinder the essentric operates to throw the intaglio cylinder into impression contact. Similarly, as the color printed portion of the paper approaches the point of contact between the two intaglio cylinders, the eccentric of the second cylinder operates to throw the cylinders into impression contact with the consequence that,
 
 
 28
 * * * a roto-gravure print will be superimposed upon the impression carried by the paper and thereby those portions of the original copy which corresponds to the shades will be received from said intaglio cylinder.
 
 
 29
 Schultz discloses the following advantages:
 
 
 30
 Our invention, which is applicable alike to the printing on paper or textile, renders it possible to produce on continuous web-presses even more faithful reproductions than is obtained by laborious offset lithographic processes when employing as many as six colors. Further advantages are the virtual elimination, owing to the register being positive throughout, of register difficulties such as are experienced in ordinary offset color printing wherein the sheet travels over numerous cylinders during the application of the color thereto and the reduction to a minimum of the possibility of blurs occurring due to stretching of the large blankets employed in most offset color printing. Besides the latter advantage in respect to minimizing blurs, the small sections of blanket used are far easier and more economical to replace when soiled or worn than are the large blankets usually employed in such work.
 
 
 31
 * * * * * *
 
 
 32
 While offset printing has certain advantages in that the yielding blanket compensates for irregularities in the paper, as distinguished from direct printing wherein an unyielding metal plate is in contact with the paper, thus enabling one to reproduce delicate shades very faithfully, nevertheless, one of the objections to the offset printing is the fact that one cannot produce the key color varying from the intense depths up to the finest gradations of tones as is possible when a direct intaglio print in the key color is superimposed in the manner herein described. Accordingly, our process while, enabling one to utilize the advantages of the intaglio for the key color and thus obtain all gradations of color from the intense depths to the softest tones, at the same time preserves all the advantages of offset printing including that of the relatively cheap cost of same.
 
 
 33
 Appellants argue that Schultz does not disclose a last transfer step under pressure. Their brief states:
 
 
 34
 Particular attention is invited to the term "roto-gravure" in the above. Actually a "roto-gravure" is a process of photogravure in which the impression is produced by etched cylindrical plates affixed to the rollers of a rotary printing press; hence, an illustration so printed. It is well know in the art that such a printing is not done under pressure so as to produce embossing.
 
 
 35
 The claim on Appeal, however, calls for several transfers with slight pressure and the last transfer is effected with strong pressure so as to secure the embossing effect.
 
 
 36
 * * * * * *
 
 
 37
 The last transfer under pressure allows a simultaneous deformation of the support in order to emboss and render the document more difficult to reproduce. The transfers that are made in Schultz et al. are made without deformation of the support and in an entirely different manner.
 
 
 38
 * * * * * *
 
 
 39
 The pressures to be exerted upon the support are totally different and the effects obtained can not be compared.
 
 
 40
 The solicitor in his brief does not support the board's conclusion, quoted supra, that the second intaglio cylinder in Schultz deforms the paper and the first does not. His argument is as follows:
 
 
 41
 * * * the question to be decided is not only whether the roller * * * [second intaglio cylinder] does deform the paper but also whether it would be obvious to have the roller * * * deform or emboss the paper. Schultz et al. do not state whether the roller * * * deforms the paper, but it does certainly appear that the direct pressure contact of the engraved roller with the paper as disclosed by Schultz et al. would deform the paper surface to some extent. Moreover, it is common in the printing art to deform or emboss a paper with an engraved roller as shown by Lohmann * * * Therefore, it would be clearly obvious to regulate the pressure contact of the engraved roller with the paper in Schultz et al. to control deformation of the paper as desired.
 
 
 42
 * * * Lohmann shows the embossing feature. Appellant acknowledges the disclosure of Lohmann and argues that the reference only shows a single transfer * * * but appellant's embossing step is also only a single transfer. * * *
 
 
 43
 We think that the solicitor's comment that Schultz does not disclose that the second intaglio cylinder embosses the paper is correct and thus appellants have the better of the argument in this respect. However, the fact that Schultz does not disclose embossing is not dispositive of the issue whether the claimed subject matter is obvious in view of all of the teachings of the prior art of record.
 
 
 44
 Turning to the section 103 issue, appellants concede that all of the steps of the process are old in the art. The patentability of the process allegedly resides in combining "these various steps in one process * * * particularly when the valuable results accomplished are viewed." However, appellants did not introduce any evidence for consideration showing facts tending to prove that valuable results are achieved. Accordingly, the valuable results alleged are limited to appellants' allegations that counterfeiting is made more difficult by employing the claimed process. Appellants' brief states:
 
 
 45
 Finally, a document is obtained whose forgery is impossible, on the one hand, owing to the complexity of the design, the superimposing of several engravings, the large number of colors utilized, and the changing of colors in the lines of each plate, and on the other hand, because during the successive printings, the document remains exactly identical with itself, i. e., that the divergences between printings of the documents are absolutely minimum, and finally, by the embossing given at the last transfer which takes place under pressure.
 
 
 46
 Finally, all the elements of the process help to make the forgery of the document more difficult, both because it enables the superimposing of several etched engravings, because the distribution of the colors is complex, and because the printings remain identical with themselves, while effecting the deformation of the support paper by the direct copper-plate engraving.
 
 
 47
 Lathey and British both state that multicolor intaglio printing makes forgery or counterfeiting of bank notes or other fiduciary papers more difficult. Schultz teaches that positive registry throughout and direct intaglio printing in the key color enables reproduction of delicate shades very faithfully, as quoted supra.
 
 
 48
 As we view the references, the advantages of each step of the process are taught by the references excepting the final embossing step as an operation to make forgery more difficult. Lohmann discloses an embossing and intaglio printing step which occur simultaneously as appellants' does. However, Lohmann contemplates that his device is useful for making seals. The specification states:
 
 
 49
 Commonly, seals and the like are printed upon a continuous web of sheet material from which they are cut. Usually a seal press includes a reciprocating die which cuts the printed seal from the web, the web moving forwardly intermittently between successive cuts by the reciprocating die. The cutting die may include an embossing die so that the cutting and embossing are simultaneous operations. Such presses are bulky and slow in operation and it is an object of this invention to manufacture such articles continuously and economically and to provide a machine for carrying out the manufacture which is continuous in operation and economical to manufacture and operate.
 
 
 50
 * * * * * *
 
 
 51
 * * * The printing mechanism is of the intaglio type for effecting raised printing and consists of a recessed die which is opposed by a resilient roll. * * *
 
 
 52
 In view of the teachings of record, we believe it was incumbent upon appellants to establish, through factual proofs, the alleged valuable results made possible by the claimed invention. Absent such evidence and any further argument demonstrating that the claimed subject matter is unobvious in view of the prior art, the board's decision must be affirmed. Each of the steps of the process argued by appellants to make forgery and counterfeiting more difficult is suggested by the prior art.
 
 
 53
 Affirmed.
 
 
 
 Notes:
 
 
 *
 United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code
 
 
 [1]
 In application serial No. 155,897, filed November 28, 1961, entitled "Method and Device for Carrying out Copper Plate Engraving Printing in Multiple Colours of Each of the Components on a Selection of Materials Such as Fiduciary Paper and Paper Obtained According to This Method." No claims have been allowed